## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Robert E. Tucker,

                    Plaintiff,          Case No. 19-12514

v.                                      Judith E. Levy
                                        United States District Judge
Devonte Brooks, *et al.*,

                                        Mag. Judge Anthony P. Patti

                    Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [36], RULE 56(f) NOTICE AND SETTING FORTH AN OPPORTUNITY FOR RESPONSE

Before the Court is Defendants' motion for summary judgment. (ECF No. 36.) For the reasons set forth below, Defendants' motion is denied. The Court also sets forth notice of its intent to grant summary judgment on certain claims independent of Defendants' motion and provides an opportunity for response under Federal Rule of Civil Procedure 56(f).

### I.      Background

#### A. Factual Background

This case involves allegations of excessive police force and denial of medical treatment during and after an arrest by Detroit Police

Department officers. On the morning of August 31, 2017, one of Plaintiff's neighbors called the police and reported hearing an argument at Plaintiff's home. (No. 19-12514,[1] ECF No. 1, PageID.2.) Defendant Officers Devonte Brooks and Andrew Zynda responded to the call and arrived at Plaintiff's residence. (*Id.*) There, Defendants Brooks and Zynda met Ms. Shawinta Robertson, who stated that Plaintiff had assaulted her and that she wanted police to be present while she removed her belongings from the home. (No. 19-12996, ECF No. 70, PageID.500–501.) Ms. Roberson was unable to enter the premises because Plaintiff allegedly barricaded the door from the inside. (*Id.* at PageID.501.) Though the details are not clear in the record, Ms. Robertson was allegedly advised to return at another time when the door was not barricaded. (*Id.*)

---

[1] As explained in further detail below, this case involves two separate dockets that are now consolidated. For clarity, the Court is using the following citation format in this Opinion and Order: Case number, ECF number, PageID.

The Court uses "*id.*" as follows: Where, for example, the Court cites "No. 19-12996, ECF No. 70, PageID.500–501" and follows with "*Id.* at PageID.501," then "*id.*" refers both to the previously-cited case number and ECF docket entry. If the Court cites, for example, "No. 19-12996, ECF No. 70, PageID.500–501" and this is followed by, "*Id.* at ECF No. 73, PageID.524," then "*id.*" refers only to the previously-cited case number.

Several hours later, Defendants Brooks and Zynda were again dispatched to Plaintiff's residence upon receiving a complaint of domestic violence and child abuse. (*Id*. at PageID.501.) Defendants Brooks and Zynda heard yelling when they arrived. (*Id*.)

As they approached the front door, Defendants observed Plaintiff running from the rear of the home. (*Id*.) Defendant Brooks pursued Plaintiff on foot while Defendant Zynda retrieved the squad car. Defendant Brooks states that he was able to catch Plaintiff after Plaintiff tripped and fell. (No. 19-12514, ECF No. 46, PageID.288.) Plaintiff states that Defendant Brooks tackled him to the ground and onto his stomach. (No. 19-12996, ECF No. 73, PageID.552.)y

Plaintiff states that he did not resist after the tackle and he placed his hands above his head. (*Id*.) He states that Defendant Brooks was "very angry" and repeatedly called him names and threatened to shoot Plaintiff if he moved. (*Id*.) Defendant Brooks, "grabbed [Plaintiff's] right wrist and twisted it around [Plaintiff's] back, and pulled it 'chicken wing' almost to [Plaintiff's] head. [Plaintiff] heard popping and screamed when [he] felt the extreme pain in [his] right arm. The popping was loud enough for [him] and anyone near to [him] to hear." (*Id*.) Plaintiff "repeatedly"

3

told Defendant Brooks that his arm was broken and that he was "screaming in pain." (*Id.*) Defendant Brooks then, "put a knee in [Plaintiff's] back, pulled [his] left arm down and handcuffed [him] extremely tightly, hurting [his] wrists." (*Id.*) Plaintiff continued to complain about arm pain and that his handcuffs were too tight. (*Id.*) Plaintiff states that Defendant Brooks then "lifted me up by my broken arm" causing Plaintiff to scream and then placed him in the squad car driven by Defendant Zynda. (*Id.*)

Plaintiff states that, once in the squad car, he "immediately told" Defendant Zynda about his broken arm and asked to be transported to the hospital. (*Id.* at PageID.552–553.) Plaintiff was groaning, sobbing, crying, asking for help, and was lying down on his left side in the back seat of the car, all while stating that the handcuffs were too tight. (*Id.* at PageID.553.)

Once at the Detroit Detention Center, Defendant Brooks pulled Plaintiff out of the patrol car by his broken arm, causing Plaintiff to scream in pain. (*Id.* at PageID.553.) Once in the Detention Center, another officer, Defendant C.D. Thomas, took Plaintiff's statement. Plaintiff told Defendant Thomas about the pain in his arm and

4

complained about the tightness of his handcuffs. (*Id*.) Defendant Thomas removed Plaintiff's handcuffs, after which Plaintiff described his hands as "purple and numb." (*Id*.) Plaintiff states that he "could not move my right arm due to pain," and that he was placed in the "bullpen" where he continued to complain of severe pain. (*Id*.)

The next day, Plaintiff was transferred to another jail, where he continued to complain of pain, and was later transported to the hospital. (*Id*. at PageID.553–554.) An x-ray of Plaintiff's arm on September 2, 2017 showed "several fractures on my right forearm, elbow and my hand." (*Id*. at PageID.554.) Plaintiff's arm was placed in a cast but his injuries did not heal properly and continue to cause him pain and numbness. (*Id*.)

Defendant Zynda states that he observed "no serious injuries to Plaintiff while in my presence" and that Plaintiff "made no complaints" of injury. (No. 19-12514, ECF No. 48, PageID.293) Defendant Thomas similarly states that he "observed no serious injuries to Plaintiff while in my presence." (*Id*., ECF No. 47, PageID.291.) He states that the only contact he had with Plaintiff was during Plaintiff's initial interview on arrival at the Detention Center. (*Id*.) Defendant Brooks' affidavit does

not address Plaintiff's injuries or his complaints of pain. (*See* No. 19-12514, ECF No. 46.)

Plaintiff was charged with domestic violence, assault, and battery. (No. 19-12996, ECF No. 39, PageID.326.) Later, all charges were dropped. (*Id.* at PageID.327.)

### B. Procedural Background

Plaintiff originally filed this lawsuit on August 27, 2019 (referred to as "*Tucker I*"). (*See* No. 19-12514, ECF No. 1.) *Tucker* I included claims against four defendants: Brooks, Zynda, Thomas, and the City of Detroit. (*Id.*) Then, on October 11, 2019, Plaintiff filed a separate lawsuit involving the same facts, the same four defendants, and four new Defendants (referred to as "*Tucker II*"). (*See* No. 19-12996, ECF No. 1.) One of the new Defendants in *Tucker II*, Corizon, filed a motion to dismiss (*Id.* at ECF No. 10) and the rest of the Defendants filed answers. (*Id.* at ECF Nos. 11, 13, 16 (amending ECF No. 13), 22, 23, and 24.) In *Tucker II*, Plaintiff stipulated to dismissing Corizon before the motion to dismiss was fully briefed (*id.* at ECF No. 34), and the remaining parties stipulated to allowing Plaintiff to amend the Complaint. (*Id.* at ECF No. 37.) Plaintiffs' Amended Complaint in *Tucker II*, filed on May 7, 2020,

included all previous Defendants except Corizon and added two more new individual Defendants. (*Id*. at ECF No. 39.)

Approximately a year later, in both *Tucker I* and *Tucker II*, Defendants Brooks, Thomas, Zynda, and the City of Detroit filed nearly identical motions for summary judgment. (*See id*. at ECF No. 70; *and see* No. 19-12514, ECF No. 36.) Plaintiff filed nearly identical responses in both cases. (*See* No. 19-12996, ECF No. 73; *and see* No. 19-12514, ECF No. 36.) Defendants did not file a reply brief in either case.

On December 3, 2021, the Court consolidated *Tucker I* and *Tucker II* and required all filings related to both cases to be filed on the *Tucker I* docket. (No. 19-12514, ECF No. 40; No. 19-12996, ECF No. 75.) On February 18, 2022, the parties filed a stipulation clarifying the claims and parties remaining. (No. 19-12514, ECF No. 44.) Pursuant to the stipulation, the remaining parties and claims are the following:

- As to Defendant Brooks: (1) "excessive force and failure to provide medical care under 42 U.S.C. § 1983;" and (2) "state law claims of gross negligence and assault/battery." (*Id*. at PageID.284.)

- As to Defendants Zynda and Thomas: (1) "failure to provide medical care under 42 U.S.C. § 1983"; and (2) "state law claims of gross negligence." (*Id*.)

7

Because this case has been fractured from the start, the Court has gone back to match these stipulated claims to their origins in the *Tucker I* and *II* complaints. The only complaint that includes an excessive force claim and assault and battery claim against Brooks is the original complaint in *Tucker I*. (*Id*. at ECF No. 1.) The denial of medical treatment and negligence claims are in the First Amended Complaint in *Tucker II*. (No. 19-12996, ECF No. 39.) This raises several issues aside from Defendants' summary judgment motion, which are addressed below.

## II.   Legal Standard

### A. Legal Standard for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

### B. Legal Standard for Qualified Immunity as to the Federal Claims

Defendants argue they are entitled to qualified immunity with respect to the federal claims. Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

There is two-prong inquiry for analyzing qualified immunity claims. First, the Court "must decide whether the facts that a plaintiff has alleged (*see* Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (*see* Rules 50, 56) are a violation of a constitutional right; and second, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at

the time it was taken." *Id.* at 244. The law is "clearly established" when the officers reasonably believed their conduct complied with the law in place at the time, including existing lower court cases. *Id.* at 244–45. The Court may determine these inquiries in any order it deems fair and efficient. *Id.* at 236–43.

### C. Legal Standard for Qualified Immunity as to the State Law Claims

Defendants argue that they are entitled to qualified immunity as a matter of law on Plaintiff's state law claims. Under Michigan law, it is the defendants' burden to demonstrate that they are entitled to qualified immunity. *Odom v. Wayne Cnty.*, 482 Mich. 459, 479 (2008) ("the burden continues to fall on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense.")

When a defendant raises governmental immunity under Michigan law, the Court must do the following:

> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL § 691.1407(5).

> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

10

(3) If the plaintiff pleaded a negligent tort, proceed under MCL § 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,
>
> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
>
> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross* [*v. Consumers Power Co.*, 420 Mich. 567 (1984)] test by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial.

*Odom*, 482 Mich. at 479–80.

## III. Analysis

For the reasons set forth below, Defendants' summary judgment motion is denied.

### A. Defendants' Motion for Summary Judgment on the Federal Claims

In Defendants' summary judgment motion, they do not differentiate between the federal claims for failure to provide medical treatment and excessive force. (*See* No. 19-12514, ECF No. 36, PageID.189–193; No. 19-12996, ECF No. 70, PageID.506–511.) Although Defendants set forth the legal standard for qualified immunity at length (No. 19-12996, ECF No. 70, PageID.506–510), they provide only a single paragraph of analysis and application of the law to the facts of this case, which is the following:

> In this case, the Officers confronted a barricaded suspect who previously assaulted his girlfriend and her son which was the basis of the police run. The officers chased the Plaintiff when he tried to escape from the rear of the location, tackled him,[2] and placed him under arrest for domestic violence and child abuse. The actions of the Officers were objectionably [sic] reasonable and there was probable cause for the arrest of Plaintiff.

---

[2] Notably, Defendants' argument that Plaintiff was "tackled" is not consistent with Defendant Brooks' affidavit, where he indicates that Plaintiff tripped and fell and does not mention a tackle. (*See* No. 19-12514, ECF No. 46.) It is Plaintiff's position that Brooks tackled him to the ground. (*See* No. 19-12996, ECF No. 73.)

(No. 19-12996, ECF No. 70, PageID.510.) Plaintiff does not challenge whether there was probable cause for his arrest, however. This lone paragraph does not address Plaintiff's denial of medical treatment or excessive force claims. Nor do Defendants address the application of the two-prong qualified immunity test as applied to either federal claim. As set forth in Federal Rule of Civil Procedure 56(c)(1):

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Defendants' single paragraph accomplishes neither. However, the Court has undertaken its own analyses of Plaintiffs' claims and Defendants' positions through careful examination of the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record").

1. **Failure to Provide Medical Treatment Claim Against All Defendants**

   **a. The Eighth and Fourteenth Amendments**

Plaintiff alleges that all three Defendants refused to provide him with medical treatment for his broken arm, which "amounted to cruel and unusual punishment which is prohibited by the *Eighth Amendment* of the Constitution of the United States" based on 42 U.S.C. § 1983. (Case No. 19-12996, ECF No. 39, PageID.328 (emphasis added).)

As an initial matter, a pretrial detainee can bring a denial of medical treatment claim under the Fourteenth Amendment but not the Eighth Amendment, which is reserved for convicted prisoners:

> The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point.

*Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). Defendants' summary judgment motion briefly remarks that Plaintiff cited to the incorrect constitutional amendment, where it states:

> Plaintiff's allegation of denial of medical care as a violation of the 8th Amendment fails as Plaintiff was not a convicted prisoner with a prison official was [sic] deliberately indifferent to his medical needs, *Comstock v. Mcrary, 273 F3d 693 (6th Cir. 2001).*

(No. 19-12996, ECF No. 70, PageID.510.)

This is indeed a flaw in Plaintiff's denial of medical treatment claim from the outset. (The fact that the claim is poorly articulated highlights a concern for the direction of this case, which is further addressed below.)

### b. Qualified Immunity Analysis

As set forth above, once a defendant asserts qualified immunity, the plaintiff has the burden to show that: "(1) undisputed evidence gives rise to a constitutional violation; and (2) the right was clearly established at the time of the incident." *Smith v. Erie*, 603 F. App'x at 418.

The Sixth Circuit has explained the relevant test under the Fourteenth Amendment for denial of medical treatment contains an objective and subjective component. *See Blackmore v. Kalamazoo Cnty.*, 390 F. 3d 890, 895 (6th Cir. 2004). The objective component "requires the existence of a sufficiently serious medical need." *Id.* (internal citations omitted). And the subjective component requires a showing that "officials have a sufficiently culpable state of mind in denying medical care." *Id.*

15

(internal citations omitted.) This component "should be determined in light of the [officials'] current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

A pretrial detainee's right to receive medical care is clearly established. *Estate of Owensby*, 414 F.3d 596, 604 (6th Cir. 2005) (the "right of pretrial detainees to adequate medical care is, and has long been, clearly established.")

It makes no difference to the analysis that Plaintiff was fleeing before he was arrested. *Id.* ("That [a defendant] may have fled or resisted before being taken into custody is irrelevant. There is no evidence that he was attempting to flee or resist during the time that he was in police custody and denied medical care.") Indeed, there has been no showing that Plaintiff was anything but compliant once he was on the ground.

As to the objective component, the Court must first determine whether the plaintiff objectively had a "sufficiently serious medical need." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Jones v. Taylor*, No. 14–

16

11847, 2015 WL 4603228, at *9 (E.D. Mich. July 30, 2015) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

Here, Plaintiff had a sufficiently serious injury that required medical attention. Defendants' own Independent Medical Examination report shows that Plaintiff's arm was broken in several places, that his finger was possibly fractured, and that his neck was injured, all of which required the medical treatment that Plaintiff ultimately received from the Detroit Medical Center ("DMC") on September 2, 2017 while in custody. (No. 19-12514, ECF No. 38-1, PageID.246.) Additionally, Plaintiff's affidavit regarding the audible popping sound from his arm during handcuffing that was "loud enough" for him and "anyone near" him to hear, followed by his pain and screaming, is also indicative of a serious injury that even a lay person could recognize. (No. 19-12996, ECF No. 73, PageID.552.)

With an injury such as this, Courts must "necessarily take[] into account the sufficiency of the steps that officers did take" in providing Plaintiff with medical treatment for his injuries in order to determine whether the medical care provided was constitutionally sufficient. The record shows that Defendants provided Plaintiff with medical treatment

at the DMC on September 2, 2017-- two days after his arrest and injury on August 31, 2017. (No. 19-12514, ECF No. 38-2, PageID.257.) This two-day delay of medical treatment under these circumstances is a sufficient showing that there is a material factual issue related to whether the Defendants acted objectively reasonably.

As to the subjective component, the record also shows that Plaintiff screamed out in pain, sobbed, cried, asked for help from the time of his arrest and injury until he was finally seen by a doctor two days later. (*Id.* at PageID.552–554.) Defendants dispute this. Defendant Zynda avers that Plaintiff "made no complaints of injury" nor did he "request medical care" once in the squad car. (*See* No. 19-12514, ECF No. 48, PageID.293). Defendant Thomas similarly states that Plaintiff was not injured so far as he could see. (*See id.* at ECF No. 47, PageID.291.) Defendant Brooks' affidavit is silent as to whether Plaintiff complained of injury or requested medical care. (*Id.* at ECF No. 46.) Accordingly, although Defendants did not make this argument, it could be that their position is that the subjective component cannot be met where officers had no knowledge that Plaintiff was injured.

18

Even if Defendants had set forth this argument, Plaintiff has set forth enough facts to demonstrate that there is a factual dispute as to whether he complained of his injury. Specifically, Plaintiff's affidavit states he was injured and vocal about his injury, pain, and need for medical treatment. (*Id.* at ECF No. 38, PageID.232–233.) Second, contemporaneous medical records from the DMC demonstrate that on September 2, 2017, Plaintiff arrived at the hospital complaining that "[m]y right arm hurts so bad" and that he had been in pain for "2 days and they didn't take me to get an xray or nothing. It's swollen and everything" which is consistent with Plaintiff's affidavit. (*Id.* at ECF No. 38-2, PageID.265.) Third, Defendants' own departmental form that informs arrestees of their constitutional rights dated August 31, 2017 at 1:45 pm, is unsigned by Plaintiff and contains the following remark: "Def states he can read English *but cannot write because his hand and arms are injured.*" (ECF No. 38, PageID.237 (emphasis added).) Again, this is consistent with Plaintiff's version of the facts that he was seriously injured and that Defendants knew about it. Viewing these facts in a light most favorable to Plaintiff, a reasonable jury could conclude that Defendants were "aware of facts from which the inference could be drawn

19

that a substantial risk of serious harm exists and the Defendants ignored that risk." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, Plaintiff has set forth enough facts to place Defendants' largely-unarticulated version of events in dispute. Qualified immunity is therefore denied on this claim, and a jury must decide whether Defendants acted reasonably.

## 2. Excessive Force Claim Against Defendant Brooks and Qualified Immunity Analysis

Plaintiff also alleges that Defendant Brooks used excessive force when arresting him, specifically when Brooks allegedly broke Plaintiff's arm, which "deprived [Plaintiff] of his constitutionally protected substantive due process right to liberty," and was in "violation of and indifference of [Plaintiff's] substantive due process liberty rights." (No. 19-12914, ECF No. 1, PageID.3.) Defendant Brooks moves for summary judgment on the basis of qualified immunity. However, as stated above, Defendant Brooks did not set forth any analysis related to the excessive force claim. (*See id.*, ECF Nos. 36, 70.) Nor do his motions address the application of the two-prong qualified immunity test to this claim.

As stated above, qualified immunity claims require a two-step analysis. Under the first qualified immunity "clearly established" factor,

20

the Sixth Circuit recognizes a constitutional right to be "free from excessive force during an arrest. . . ." *Minchella v. Bauman*, 72 F. App'x 405, 407 (6th Cir. 2003) (citing *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) (indicating that when allegations of excessive force occur "during the course of the arrest of a free person, ... the parties' rights and liabilities are governed by the Fourth Amendment's reasonableness standard"). In the Sixth Circuit, if an officer's takedown and handcuffing results in breaking the suspect's arm, this can be considered excessive force that the suspect had a constitutional right to be free from. *See Solomon v. Auburn Hills Police Dep't.*, 389 F.3d 167, 175 (6th Cir. 2004) (finding an officer's use of force where he "yanked" the suspect's arm "behind her with such force that it fractured" was excessive and "unnecessary, unjustifiable, and unreasonable" force). Accordingly, the "clearly established" prong is met.

Under the second qualified immunity prong—whether a constitutional violation took place under the facts of this case—the Court must apply an "an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances

21

confronting the defendants, and not to the underlying intent or motivation of the defendants." *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham v. Connor*, 490 U.S. at 396–97.

The objective reasonableness test for use of force during an arrest involves a three-factor inquiry: "[ (1) ] the severity of the crime at issue, [ (2) ] whether the suspect poses an immediate threat to the safety of the officers or others, and [ (3) ] whether he is actively resisting arrest or attempting to evade arrest by flight." *Burgess v. Fischer*, 735 F.3d 462, 472–73 (6th Cir. 2013) (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013)). "These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Id*. at 473 (citing *Graham*, 490 U.S. at 396–97). The Court must consider the totality of the circumstances when considering the three factors in the light most favorable to Plaintiff. A reviewing court should analyze the event in segments when assessing the reasonableness of a police officer's actions. *See Phelps*, 286 F.3d at 301.

Under the first factor, the severity of the crime at issue, Defendant Brooks was called to the scene for alleged domestic violence and child abuse. This was his second call to the same location that day, and accordingly, Defendant Brooks had previous knowledge of a conflict and of certain details such as the barricading of the front door earlier in the day. Under Sixth Circuit law, domestic abuse is a violent offense, which means that the severity of the crime at issue weighs in favor of Defendant Brooks. *See Goodrich v. Everett*, 193 F. App'x 551, 555 (6th Cir. 2006) (finding in a case of excessive force that the domestic violence is a crime of a severity that weighs the first factor in the police officer's favor).

The second and third factors—whether the suspect poses an immediate threat and whether the suspect is actively resisting arrest— weigh in Plaintiff's favor. Neither party disputes that Plaintiff fled out the back door upon Defendants' arrival, which resulted in Defendant Brooks chasing him and taking him down (or arresting Plaintiff after he tripped and fell). But after Plaintiff was on the ground, there are no facts

to suggest that Plaintiff posed any threat or was actively resisting. Brooks' affidavit does not address this event at all.[3]

On the other hand, Plaintiff has set forth facts that show that, once he was prone with Defendant Brooks' knee on his back, Defendant Brooks took Plaintiff's arm, bent it "chicken wing-style" until there was an audible pop, and handcuffed Plaintiff causing him to scream in pain. (No. 19-12996, ECF No. 73, PageID.552–555.) Defendant Brooks lifted Plaintiff by the injured arm to place him in the squad car, resulting in more pain. (*Id.*) And then Defendant Brooks pulled Plaintiff by the injured arm a third time once arriving at the police station. (*Id.*) Sixth Circuit law has long held that an officer need not use force on a "citizen who has been arrested and restrained, who is securely under the control of the police, and who is not attempting to escape." *Cox v. Treadway,* 75 F.3d 230, 234 (6th Cir. 1996). Thus, Plaintiff alleges that he continually

---

[3] As explained above, Defendant Brooks' affidavit does not address this topic at all, however, an earlier, unsigned version of the affidavit submitted by Defendants contemporaneous with their brief contains a paragraph indicating that Plaintiff was not obviously injured, never complained of injury, nor requested medical care. (*See* 19-12006, ECF No. 70-1, PageID.514.) Perhaps these paragraphs were eliminated from the final signed version of Defendant Brooks' affidavit because they are untrue. The Court need not resolve that issue, however, nor does it make a difference in the final analysis.

complained of the hand cuffs being too tight and Defendant failed to respond.

Accordingly, the second and third factors weigh in Plaintiff's favor. Qualified immunity cannot be granted as a matter of law and it is up to a jury to decide whether Defendant Brooks used excessive force when effectuating Plaintiff's arrest.

### B. State Law Claims: Gross Negligence Against All Defendants and Assault Against Defendant Brooks Only

Plaintiff alleges that all three Defendants are liable for gross negligence and, pursuant to the parties' stipulation, Plaintiff maintains that Defendant Brooks is liable for assault and battery in addition to negligence. (No. 19-12514, ECF No. 44, PageID.284.) Plaintiff cannot maintain a cause of action for both an intentional tort of assault and gross negligence under Michigan law, as set forth below.

As with the federal claims, Defendants' motion for summary judgment on both state-court claims is conclusory and fails to demonstrate that there are no material facts in dispute under Federal Rule of Civil Procedure 56. (*See* No. 12514, ECF No. 36, PageID.194; No.

19-12996, ECF No. 70, PageID.511.) Despite this, the Court has undertaken its own analysis of the record.

As to both claims, Defendants argue that they are entitled to governmental immunity. (No. 19-12996, ECF No. 70, PageID.511.) They include the following facts in support of their argument. "Plaintiff refused medical attention at the scene from EMS technicians who were at the scene. Plaintiff did not make any claim to Defendants Brooks and Zynda while being transported to the Detroit Detention Center nor to personnel there upon booking[.]" (*Id*.) This indication that there may have been EMS present and that Plaintiff refused medical treatment is not supported by any facts in the record supplied to the Court; rather it is mentioned for the first and only time in Defendants' motion.

Regardless, as explained above with respect to Plaintiff's claim for denial of medical treatment, there is a disputed issue of material fact as to whether Plaintiff complained about pain and requested medical attention. There is also a dispute over whether Defendant Brooks used excessive force, and thus could also be liable for an assault and battery against Plaintiff. And if a jury determines that Defendant Brooks' level of force after Plaintiff was face down on the ground was excessive, it could

26

also find Brooks liable for assault and battery. Accordingly, summary judgment is denied on both state-law claims.

## IV.   Order for Further Briefing and Clarification

The Court gives notice of its intent to grant summary judgment independent of the motion on certain claims and affords Plaintiff the opportunity to address the following.

### A. Dismissal of Counts Not Included in the Operative Complaint

As set forth above, Plaintiff maintains his assault and battery and excessive force claims against Defendant Brooks. (*See* No. 19-12514, ECF No. 44.) However, the only complaint that contained claims for assault and battery and excessive force against Defendant Brooks was the original complaint in *Tucker I*. (No. 19-12514, ECF No. 1, PageID.6–7.) Plaintiff then amended the complaint twice (albeit in *Tucker II*, which is now consolidated with *Tucker I*) Accordingly, the last-filed amended complaint in *Tucker II* does not contain a count for assault and battery or excessive force against Defendant Brooks. (*See* No. 19-12996, ECF No. 39.)

An amended complaint supersedes and replaces older versions. *See William Powell Co. v. Nat'l Indemnity Co.*, 18 F. 4th 856, n.6 (6th Cir.

2021). There has been no showing that the older complaint could or should be brought back to life in this case for any reason, and in general it "makes little sense to [look at] the ghosts of departed pleadings." *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 591 (6th Cir. 2013).

Plaintiff is ordered to show cause why counts that he eliminated from the operative complaint could or should be viable. In the absence of a sufficient showing, the assault and battery and excessive force claims against Defendant Brooks will be dismissed with prejudice.

### B. Simultaneous State Law Claims for Negligence and Intentional Torts

Assuming Plaintiff can demonstrate that the assault and battery claim against Defendant Brooks should be permitted, then Plaintiff must also demonstrate that he is entitled to maintain it alongside his gross negligence claim against Defendant Brooks.

Michigan courts have rejected negligence claims that are "fully premised" on excessive force and have "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *VanVorous v. Burmeister*, 262 Mich. App. 467, 484 (2004).

28

Additionally, as set forth above, Michigan law requires the Court to determine whether "the plaintiff pleaded an intentional *or* a negligent tort." *Odom*, 482 Mich. at 479–80 (emphasis added). From there, Michigan law differs based upon whether the claim is intentional or negligent and does not permit a claim to go forward as both. *Id.*

Plaintiff's *Tucker I* Complaint appears to tie together his negligence and excessive force (intentional) claims against Defendant Brooks, where he includes the following details for both claims: Brooks (1) kneeling on Plaintiff's back; (2) pulling Plaintiff's arm behind his back chicken wing-style and breaking it. (*See* No. 19-12514, ECF No. 1, PageID.6.) This would appear to directly violate Michigan's prohibition against allowing both claims to move forward based upon the same facts.

Plaintiff's position then shifts, however. In the operative complaint, the negligence claim appears to relate only to all Defendants' alleged failure to obtain proper and timely medical treatment and is silent as to a separate claim based on Brooks' actions and inactions. (No. 19-12996, ECF No. 39, PageID.330–331.)

Then, in another shift, in Plaintiff's response to Defendants' motion for summary judgment, he states that his intentional tort claim against

29

Defendant Brooks is not based upon denial of medical treatment, but rather Brooks' (1) tackling Plaintiff; (2) breaking his arm; (3) tightening his handcuffs so tight as to cause injury; (4) ignoring Plaintiff's distress and requests for medical treatment; (5) forcing Plaintiff into the police car. (No. 19-12514, ECF No. 38, PageID.226–227.) Accordingly, is unclear what the basis is for Plaintiff's negligence versus intentional tort claims against Defendant Brooks. Notably, the operative complaint does not include an allegation that Plaintiff's handcuffs were too tight and caused an injury even though this is contained in Plaintiff's response brief. (*See* No. 19-12996, ECF No. 39.)

Plaintiff is ordered to show cause why the Court should permit a state negligence claim against Defendant Brooks to go forward alongside his intentional tort case, and what facts they are based upon. If they are "fully premised" on the same facts, then they cannot simultaneously go forward.

## V.   Conclusion

For the reasons set forth above, the Court DENIES Defendants' motion for summary judgment. Plaintiff is afforded the opportunity to respond, in no more than 10 pages, to the Court's inquires regarding the

deficiencies in the case no later than June 15, 2022. If they choose, Defendants may respond to Plaintiff's brief, in no more than 10 pages, no later than June 22, 2022. If Defendants respond, Plaintiff may, but is not required, to file a 5 page reply by June 29, 2022.

Failure to show cause will result in dismissal of some or all of Plaintiff's state-court claims with prejudice.

IT IS SO ORDERED.

Dated: May 16, 2022                    s/Judith E. Levy
Ann Arbor, Michigan                    JUDITH E. LEVY
                                       United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 16, 2022.

                                       s/William Barkholz
                                       WILLIAM BARKHOLZ
                                       Case Manager

31